**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00474-CR**
_____

**CHARLES LAMAR HICKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 12-13646**

**MEMORANDUM OPINION**

A jury convicted Charles Lamar Hicks of aggravated robbery and sentenced Hicks to life in prison as a habitual offender. In three appellate issues, Hicks challenges the legal sufficiency of the evidence to support the jury's verdict, the trial court's denial of his motion for an instructed verdict, and the trial court's cumulation order. We affirm the trial court's judgment as modified.

Factual Background

Twelve-year-old K.H. testified that, on the day of the offense, she saw a man enter through the back door of her home and point a gun at her. K.H. ran to her grandmother K.P., and the man followed with the gun. K.H. ran to her bedroom and called 9-1-1. C.N., K.P.'s husband, testified that the man pointed the gun at him and told him to lie down on the floor. The man pointed the gun at K.P. and, thinking the gun was a toy, K.P. pushed the gun away, but felt that the gun was metal and cold. C.N. testified that he was afraid the man would shoot K.P. K.P. then followed the man's instructions to lie on the floor with C.N. J.N., K.H.'s mother, was inside her bedroom when the man loudly knocked on her door. Out of fear for her family's safety, J.N. opened the door. The man pointed the gun at J.N. and told J.N. to get down on the floor. J.N. testified that she was in fear for her life and the lives of K.H., C.N., K.P., and her other daughter who was also inside the home.

K.P., J.N., and C.N. testified that the man demanded money, and K.P. testified that the man took approximately $300 from her purse. After obtaining the money, the man went to K.H.'s room and kicked down her bedroom door. K.P. ran out of the house to find help. When the man noticed K.P. had left, he ran out the back door. C.N., who had followed K.P., saw the man leave in a truck.

Officer Shannon Meaux testified that he located the suspect at a gas station and identified the suspect as Hicks. Meaux asked Hicks if he had any weapons in the truck, and Hicks replied that he had a gun. Officers discovered a small pistol with duct tape on the pistol grip. Meaux testified that the pistol was loaded, but did not appear to be in working condition. Meaux testified that the pistol is a firearm and is capable of causing serious bodily injury and death. Detective Brian Fanette testified that Hicks was in possession of a large amount of cash and property belonging to one of the victims. K.H., K.P., C.N., and J.N. all identified Hicks as the robber.

Legal Sufficiency

In issue one, Hicks contends the evidence is legally insufficient to support his conviction. In issue two, Hicks argues that the trial court erred by denying his motion for an instructed verdict. These two issues are founded on Hicks's contention that the State failed to prove the use or exhibition of a firearm during the robbery. Specifically, Hicks argues that the purported weapon does not qualify as a firearm because it was inoperable and could have easily been a type of non-lethal weapon. We address these issues together.

Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact

could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. A challenge to a trial court's denial of a motion for an instructed verdict is essentially a challenge to the sufficiency of the evidence to support the conviction. *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).

A person commits aggravated robbery if (1) "in the course of committing theft" and "with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death[;]" and (2) "uses or exhibits a deadly weapon." Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (West 2011). A "deadly weapon" encompasses (1) "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury;" or (2) "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17) (West Supp. 2012). A "firearm" refers to "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use."

4

*Id.* § 46.01(3) (West Supp. 2012).[1] The term "gun" may be a broader term than "firearm" and may include nonlethal instruments, such as BB guns, blow guns, pop guns, and grease guns. *Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Nevertheless, the jury may "draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime." *Id.* Absent any specific indication to the contrary at trial, the jury may draw the reasonable inference that the gun used in the commission of a crime was a firearm. *Id.* A firearm is a deadly weapon *per se*. *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

The jury heard evidence that Hicks pointed a gun at K.H., K.P., C.N., and J.N. Although K.P. initially believed the gun to be a toy, she testified that the gun felt cold and was metal. C.N. feared the man would shoot K.P., and J.N. testified to fearing for all their lives. The jury heard Meaux's testimony that a loaded gun was found in Hicks's vehicle and that Hicks was identified as the robber. Meaux testified that the firearm was capable of causing serious bodily injury and death. Hicks's threatening the victims with the gun in itself suggests that it was a firearm and not a gun of the non-lethal variety. *See Cruz*, 238 S.W.3d at 389. The State need not prove that the gun was operable. *See Wright v. State*, 582 S.W.2d 845,

---

[1]Because the amendments to sections 1.07 and 46.01 are not material to this case, we cite to the current version of the statutes.

847 (Tex. Crim. App. 1979). Viewing the evidence in the light most favorable to the jury's verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Hicks committed the offense of aggravated robbery and used or exhibited a deadly weapon, to wit, a firearm. *See* Tex. Penal Code Ann. §§ 1.07(a)(17), 29.02(a)(2), 29.03(a)(2), 46.01(3); *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule issues one and two.

## Cumulation Order

In issue three, Hicks contends that the trial court's cumulation order contains none of the requisite elements for imposition of such an order. When a defendant has two or more convictions, the trial court may order that the sentences run concurrently or consecutively. Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2012).[2] Recommended elements for a valid cumulation order include: (1) the cause number of the prior conviction; (2) the correct name of the trial court where the prior conviction was imposed; (3) the date of the prior conviction; (4) the term of years of the sentence imposed for the prior conviction; and (5) the nature of the prior conviction. *Stokes v. State*, 688 S.W.2d 539, 540 (Tex. Crim. App. 1985). The trial court need not include all five elements in its cumulation order. *Id.*

---

[2]Because the amendments to article 42.08 are inapplicable to this case, we cite to the current version of the statute.

6

At the conclusion of the punishment phase of trial, the trial court stated:

> You are here now remanded to the custody of the sheriff of Jefferson County until he can obey and carry out these directions and instructions of sentence and the judgment shall reflect that this sentence shall run consecutive to any other sentence.

The trial court's judgment states:

> The Court ORDERS that the sentence in this conviction shall run consecutively and shall begin only when the judgment and sentence in the following case has ceased to operate: 244615, OUT OF HARRIS COUNTY, TEXAS.

The record contains a May 1980 judgment from the 176th District Court of Harris County, cause number 244615, finding Hicks guilty of the felony offense of robbery by firearm and sentencing Hicks to fifty-five years in prison.

"A valid cumulation order should be sufficiently specific to allow the Texas Department of Criminal Justice -- Institutional Division (TDCJ -- ID), to identify the prior with which the newer conviction is cumulated." *Ex parte San Migel*, 973 S.W.2d 310, 311 (Tex. Crim. App. 1998). A cumulation order, such as the one in this case, which recites only the cause number and county of a prior conviction, is insufficient when the prior judgment is from a different county. *Id*. at 310. The State contends that the record contains ample information for this Court to reform the trial court's cumulation order. We agree. An appellate court may modify a cumulation order when the record contains the necessary data needed for

7

reformation. *Banks v. State*, 708 S.W.2d 460, 462 (Tex. Crim. App. 1986); *Revels v. State*, 334 S.W.3d 46, 56 (Tex. App.—Dallas 2008, no pet.). Because the record in this case contains sufficient data to allow for reformation of the trial court's cumulation order, we modify the judgment to state:

> The Court ORDERS that the sentence in this conviction shall run consecutively and shall begin only when the May 5, 1980, judgment and fifty-five-year sentence in the following case has ceased to operate: cause number 244615 in the 176th District Court of Harris County involving robbery by firearm.

*See Revels*, 334 S.W.3d at 56. We affirm the trial court's judgment as modified.

AFFIRMED AS MODIFIED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 13, 2013
Opinion Delivered July 10, 2013
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

8